UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 2:14-cr-09-01
    HON. ROBERT HOLMES BELL

IVEL RAY HOPKINS,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant moves to suppress statements that he made on November 4, 2013, during an interview that occurred at the Marquette City Police Department. Defendant is charged with knowingly and intentionally possessing and distributing pseudoephedrine and knowing that it would be used to manufacture methamphetamine in violation of 21 U.S.C. § § 841(c)(2), 802(33) and (34)(K), 21 C.F.R. § 1310.02(a)(11) and 18 U.S.C. § 2(a). A hearing was conducted by the undersigned on July 29, 2014.

At the hearing, United States Probation Officer Joshua Hechtman testified that he supervised Defendant. Defendant was a resident at Great Lakes Recovery Center in Marquette, Michigan. Probation Officer Hechtman testified that he was informed that Detective Hanes of the Marquette City Police Department wanted to speak with Defendant about pseudoephedrine purchases. As a result of the telephone call, Defendant was placed on restrictions at Great Lakes Recovery Center. Defendant was allowed to attend counseling sessions and visit his mother. Probation Officer Hechtman spoke with Detective Hanes on the day of the interview and then

telephoned Sue Burcar, the Director at Great Lakes Recovery Center, to inform her that a police officer would be arriving to pick up Defendant and transfer him to the Marquette City Police Department for the interview with Detective Hanes. Defendant informed Probation Officer Hechtman that he had an existing warrant for retail fraud and thought that he would be arrested. Probation Officer Hechtman encouraged Defendant to cooperate with the police.

Defendant testified that he was called to Sue Burcar's office and that a police officer was inside the office. The officer told Defendant he was not under arrest and that Detective Hanes wanted to speak with Defendant at the police station. Defendant testified that he believed he was placed in handcuffs and was transported to the police station in a patrol car. Defendant was taken inside the police station where he overheard a conversation between the transporting officer and Detective Hanes. The officer asked Detective Hanes, "What about the other issue?" Detective Hanes responded, "We'll deal with that once I'm done with my questioning." Defendant believed he would be arrested based upon that conversation. Defendant testified that he believed he was in handcuffs during Detective Hanes' questioning. Defendant was not given *Miranda* rights, but was told he did not have to answer questions and was free to leave if he wished. Defendant was told he could stop the interrogation at any time. Defendant indicated that Detective Hanes was not being truthful by making these statements. During the interview, Defendant admitted that he purchased pseudoephedrine four times, but later found out that it had been five times. It was discussed who the pseudoephedrine was purchased for and how much Defendant received in payment. Defendant denies that he knew the pseudoephedrine was purchased to make methamphetamine. As soon as Defendant left the interview room, he was taken by Officer Inch to the Marquette County Jail and was arrested for retail fraud. Defendant indicated that he understood he was in custody and was not free to leave after he overheard Detective Hanes tell the transporting officer that they would deal

with the "other issue" after the interview. Defendant's testimony was not credible and was clearly inaccurate in several respects, including incorrectly identifying the police officer who picked him up at Great Lakes Recovery Center. More importantly, the credible evidence establishes that Defendant was not arrested or placed in handcuffs when he left Great Lakes Recovery Center.

Marquette City Police Officer Robert C. McLaughlin testified that he received a telephone call from Detective Hanes requesting that he go to Great Lakes Recovery Center and bring Defendant to the police station for an interview. Officer McLaughlin went to the office at Great Lakes Recovery Center and picked up Defendant, and then walked Defendant to the patrol car. Defendant sat in the back of the patrol car. Defendant was not placed in handcuffs because he was not in custody and was not under arrest at that time. The Government introduced Officer McLaughlin's daily log sheet which indicated that the type of call or complaint was "NC" or non-criminal. Officer McLaughlin testified that there are no circumstances when he would handcuff an individual who was not in custody. Officer McLaughlin testified that he did not know the circumstances of Detective Hanes' investigation. The drive to the police station took five to seven minutes. Defendant was taken into the police station without handcuffs. Once inside, Detective Hanes took over. Officer McLaughlin did not believe that he had a conversation with Detective Hanes at that time. Officer McLaughlin then returned to his patrol duties.

Detective Hanes testified that after interviewing individuals involved in a methamphetamine fire, he learned that Defendant was involved. Detective Hanes called United States Probation Officer Hechtman to advise him that he needed to speak with Defendant. Detective Hanes called Officer McLaughlin and asked him to go to Great Lakes Recovery Center and pick up Defendant. He did not discuss his investigation with Officer McLaughlin. Officer McLaughlin brought Defendant to the police station. Defendant was not handcuffed. As the two were walking

inside the building, Detective Hanes went to Defendant and introduced himself. Detective Hanes told Officer McLaughlin, "Thanks." Detective Hanes and Defendant went into the interview room. The interview room is an eight by eight office with a two-way mirror, a desk, chairs and some filing cabinets. Detective Hanes did not read defendant his *Miranda* rights. The interview lasted fifteen to twenty minutes. Detective Hanes told Defendant that he was not under arrest, that he did not have to answer questions, and that he could leave the interview room and terminate the interview. Defendant stated that he would answer questions and was cooperative. At the end of the interview, Detective Hanes went outside the interview room and asked Officer Inch to take Defendant to the jail to be arrested because Defendant had a retail fraud warrant outstanding. Detective Hanes was aware of the warrant before he conducted the interview and intended to have Defendant arrested at the conclusion of the interview. Defendant was not in handcuffs at the conclusion of the interview and was still sitting in the interview room. Although Defendant could leave the interview room, he would not have been able to leave the police station before he was arrested. Detective Hanes never mentioned the warrant during the interview.

  Marquette City Police Officer John Inch testified that he became involved when Detective Hanes came out of the interview room and advised him that there was an outstanding arrest warrant for Defendant and asked him to process Defendant. Officer Inch introduced himself to Defendant, escorted Defendant out of the interview room, completed paperwork, and transported Defendant across the street to the jail. Defendant was handcuffed prior to being placed inside the vehicle for transport to the jail.

  The Government concedes that *Miranda* warnings were not given prior to the interview and that Defendant was arrested on a charge that was unrelated to the subject matter of the interview after conclusion of the interview. However, the Government argues that Defendant was

- 4 -

not under arrest, was not in custody, and made his confession voluntarily at the time of the interview. The Government submits that Defendant was interviewed as part of an investigation and was not in custody at the time of the interview.

> The Fifth Amendment provides that a defendant cannot be "compelled in any criminal case to be a witness against himself." Consistent with this right against self incrimination, the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 478-479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), ruled that suspects cannot be subjected to a custodial interrogation until they have been advised of their rights. In order to encourage compliance with this rule, incriminating statements elicited from suspects in custody cannot be admitted at trial unless the suspect was first advised of his or her *Miranda* rights. *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528-29, 128 L.Ed.2d 293 (1994).

*United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998).

It is the compulsive aspect of custodial interrogation which led the Supreme Court to develop the *Miranda* doctrine. Thus, law enforcement's obligation to administer *Miranda* warnings is triggered only where there has been such a restriction on a person's freedom as to render him "in custody." *Miranda*, 384 U.S. at 444. In determining whether an individual is in custody, a court must examine the totality of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Id.* at 1528-1529. Under this approach, courts look at factors which include: (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily acquiesced to the request for an interview. *Salvo* at 950.

In *California v. Beheler*, 463 U.S. 1121, 103 S. Ct. 3517 (1983), the suspect voluntarily accompanied police to the station for questioning and freely departed at the end of the interview, after being told he was not under arrest but that his statement would be evaluated by the district attorney concerning that possibility.  Similarly, in *Oregon v. Mathiason*, 429 U.S. 492, 97 S. Ct. 711 (1977), the defendant agreed to meet the investigating officer at the station house for an interview.  The defendant was told he was a burglary suspect but that he was not under arrest.  He was told that his truthfulness would be evaluated by the district attorney or judge.  He was taken into a closed office where he was questioned concerning the burglary.  The defendant was falsely told that his fingerprints were found at the scene.  After a long pause, the defendant admitted to the crime.  The defendant was then given *Miranda* warnings, but was not arrested.  He left the station after being informed that the case would be referred to the district attorney for a decision whether charges would be pursued.

In both of these cases, the Supreme Court found that *Miranda* warnings were unnecessary because questioning did not take place in a context in which the defendant's freedom to depart was restricted in a meaningful way.  The Court acknowledged that all police interviews of those suspected of crime have coercive aspects.  However, police are not required to administer *Miranda* warnings to every suspect they interview.  It is only under the additional pressures of a custodial environment that *Miranda* is triggered.

The Government argues that Defendant was not in custody at the time of the investigatory interview and that Defendant participated voluntarily in the interview.  There is no suggestion that Defendant was coerced into making a statement and no facts to support such an argument.

Defendant was transported to the police station in a patrol vehicle. Defendant was never told that he was under arrest and was not placed in handcuffs. When Defendant arrived at the police station, he was taken into the interview room. The interview lasted approximately twenty minutes. Defendant was not placed in handcuffs during the interview and was free to move around. Defendant was not asked about the shoplifting charge. The interview and investigation had nothing to do with Defendant's outstanding arrest warrant for retail fraud. Defendant indicated that he was willing to cooperate with police. After he was arrested on shoplifting charges, Defendant made further statements about his involvement with pseudoephedrine to Officer Inch. "A policemen's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). Defendant indicates that even before he arrived at the police station, he knew he would be arrested because he had an outstanding warrant for his arrest for retail fraud. However, Defendant was never told that he would be arrested and was never asked about the retail fraud. Defendant was told that he was not under arrest and that he was free to terminate the interview at any time. Defendant was asked only about his activities in purchasing pseudoephedrine and the interview never involved any matters related to retail fraud or shoplifting. Defendant was not placed in handcuffs until he was actually arrested on the outstanding warrant. Under the totality of circumstances, *Miranda* warnings were not required prior to Detective Hanes' interview of Defendant regarding pseudoephedrine purchases because Defendant was not in "custody."

Accordingly, it is recommended that Defendant's Motion to Suppress Evidence (Docket #69) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   September 2, 2014